1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   ISAAC NSEJJERE MAYANJA,                CASE NO. C25-0429JLR

11                         Plaintiff,            ORDER

            v.
12
      CITY OF SHORELINE, et al.,
13
                          Defendants.
14

## I.    INTRODUCTION

15

16      Before the court are (1) *pro se* Plaintiff Isaac Nsejjere Mayanja's complaint

17   against Defendants the City of Shoreline, City Attorney Sarah Roberts, prosecutor Emma

18   Vetter, prosecutor Carmen McDonald, City Victim Coordinator Alyssa Schultz Banchero

19   ("City Defendants")[1], and Michelle Rene Mayanja (together with City Defendants, the

20   "Defendants") (Compl. (Dkt. # 4)); and (2) United States Magistrate Judge S. Kate

21

22      [1] Mr. Mayanja sues Ms. Roberts, Ms. Vetter, Ms. McDonald, and Ms. Schultz Banchero
in both their individual and official capacities.  (Compl. (Dkt. # 4) at 16-17.)

1  Vaughan's order granting Mr. Mayanja's application to proceed *in forma pauperis*

2  ("IFP") and recommending that the court review the complaint pursuant to 28 U.S.C.

3  § 1915(e)(2)(B).  (IFP Order (Dkt. # 3).)  The court has considered Mr. Mayanja's

4  complaint and determined that the allegations therein fail to state a claim upon which

5  relief can be granted.  Accordingly, the court DISMISSES Mr. Mayanja's complaint with

6  partial leave to amend.

7                          **II.    BACKGROUND**

8         On March 17, 2025, Mr. Mayanja filed a complaint under 42 U.S.C. § 1983 and

9  § 1985 alleging that City Defendants violated his rights under the Fourth, Sixth, and

10  Fourteenth Amendments and engaged in fraud, malicious prosecution and manifest

11  negligence in prosecuting him for felony assault against Ms. Mayanja.  (Compl. at 1, 18,

12  23-52, 34.)[2]  He also contends that Ms. Mayanja made false allegations against him.  (*Id.*

13  at 18.)  Mr. Mayanja states that this complaint concerns Defendants' "fabricated

14  allegations, unconscionable withholding of exculpatory evidence, suborning perjury,

15  flagrant misconduct, and suppression of impeachment evidence." (*Id.* at 12 (cleaned

16  up).)  He contends that the state court overturned a jury's guilty verdict in an unidentified

17  proceeding after finding that City Defendants had suppressed unidentified exculpatory

18  evidence during the pretrial and trial periods.  (*Id.* at 12.)  He asserts that the court

19  ordered a new trial on this basis (*id.* at 20), but that City Defendants continued to

20  suppress exculpatory or impeaching evidence over the course of 28 months in six

21

22         [2] When citing to Mr. Mayanja's complaint, the court refers to the CM/ECF page numbers
at the top of the page.

1    different court proceedings.[3]  (*Id.* at 13, 18; *see id.* at 22, 26-28.)  He contends that City

2    Defendants "'kind of' provided more disclosure" after the court ordered them to do so.

3    (*Id.* at 20.)  Mr. Mayanja also avers that his previous defense attorney, who does not

4    appear to be a defendant in this action, had a "strategy" to "h[o]ld back exonerating

5    information [that] . . . would assert that a black man would make a sympathetic white

6    woman look bad[.]"  (*Id.* at 21.)  Mr. Mayanja contends that he declined a plea deal

7    offered by City Defendants, and that his case was "unconditionally dismissed on

8    November 7, 2024."  (*Id.* at 13.)

9        Mr. Mayanja initiated this action to "remedy the harm caused by [Defendants']

10   unconscionable acts" in connection with the unidentified court proceeding.  (*Id.* at 14.)

11   He asserts that during the unidentified court proceedings, Defendants "connived with"

12   Ms. Mayanja to raise false allegations against him.  (*Id.* at 13.)  Mr. Mayanja alleges that

13   Ms. Vetter and Ms. McDonald made false statements and concealed exculpatory

14   information as part of a "common scheme o[r] plan" to "fabricate charges" against him.

15   (*See id.* at 20 ("[Ms.] Vetter consistently made false exculpatory statements that squarely

16   benefitted Shoreline[.]"); *id.* at 29 (stating that Ms. McDonald "boasted" that City

17   Defendants would secure a conviction).)  He contends that Ms. Vetter and Ms. McDonald

18   "committed the alleged constitutional allegations pursuant to a longstanding

19   practice/custom" of Shoreline, and that Ms. Roberts improperly "ratified" Ms. Vetter and

20

21   _____

22   [3] Mr. Mayanja contends that City Defendants committed "manifest negligence" in
     concealing evidence in the first four proceedings, and that the last two acts of alleged
     concealment were "deliberate and malicious [] attempt[s] to cover up the crime."  (*Id.* at 22.)

ORDER - 3

1    Ms. McDonald's alleged misconduct." (*See id.* at 18, 20, 25-26, 31.)  He further alleges

2    that he has suffered emotional distress as a result of Defendants' alleged conduct.  (*Id.* at

3    1.)

## III.    ANALYSIS

5        Title 28 U.S.C. § 1915(e)(2)(B) authorizes a district court to dismiss a claim filed

6    IFP "at any time" if it determines (1) the action is frivolous or malicious; (2) the action

7    fails to state a claim; or (3) the action seeks relief from a defendant who is immune from

8    such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Lopez v. Smith*, 203 F.3d 1122, 1127

9    (9th Cir. 2000) (clarifying that § 1915(e) applies to all IFP proceedings, not just those

10    filed by prisoners).  Because Mr. Mayanja is a *pro se* plaintiff, the court must construe his

11    pleadings liberally.  *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992).

12    Nonetheless, dismissal is proper when there is either a "lack of a cognizable legal theory

13    or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

14    *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

15        To survive dismissal, a complaint must contain factual allegations sufficient "to

16    raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

17    544, 555 (2007).  Although Federal Rule of Civil Procedure 8 does not require "detailed

18    factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-

19    harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*,

20    550 U.S. at 555) (requiring the plaintiff to "plead[] factual content that allows the court to

21    draw the reasonable inference that the defendant is liable for the misconduct alleged");

22    *see* Fed. R. Civ. P. 8(a)(1)-(2) (requiring a pleading to contain "a short and plain

statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief"). Additionally, claims grounded in fraud are governed by the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To sufficiently allege fraud under Rule 9(b), the plaintiff must provide facts demonstrating the "who, what, when, where, and how" of the misconduct charged. *Ticey v. Fed. Deposit Ins. Corp.*, No. C22-1110MJP, 2023 WL 2742055, at *2 (W.D. Wash. Mar. 31, 2023), *aff'd*, No. 23-35614, 2025 WL 671114 (9th Cir. Mar. 3, 2025) (citation omitted). As discussed below, Mr. Mayanja's complaint is subject to dismissal for failure to state a claim.

**A.      Section 1983 Claim for Alleged *Brady* Violations**

The court first addresses Mr. Mayanja's § 1983 *Brady* claims against Ms. Vetter and Ms. McDonald, and then separately addresses his claims against Shoreline and Ms. Roberts.

1.   *Brady* Claims Against Ms. Vetter and Ms. McDonald

Mr. Mayanja's § 1983 *Brady* claims against Ms. Vetter and Ms. McDonald in their individual capacities are based on their alleged failure to turn over exculpatory or impeaching information before and during his trial. (*See* Compl. at 23-30.) Prosecutors, however, are absolutely immune from liability for civil damages for failing to turn over exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Broam v. Bogan*, 320 F.3d 1023, 1025, 1030 (9th Cir. 2003) (holding that a prosecutor is entitled to absolute immunity for her "decision not to . . . turn over exculpatory material before

1    trial, during trial, or after conviction"); *see also Imbler v. Pachtman*, 424 U.S. 409, 431-

2    32 n. 34 (1976) (explaining that the "deliberate withholding of exculpatory information"

3    is included within the "legitimate exercise of prosecutorial discretion"); *Adamson v.*

4    *Pierce Cnty.*, No. C21-05592DGE, 2022 WL 1667016, at *3 (W.D. Wash. May 25, 2022)

5    ("In short, all decisions involving evidence presented at trial are "'intimately associated

6    with the judicial phase of the criminal process"). In addition, Mr. Mayanja's § 1983

7    claims against Ms. Vetter and Ms. McDonald in their official capacities are barred by the

8    Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65, 71

9    (1989).[4] Accordingly, Mr. Mayanja's § 1983 *Brady* claims against Ms. Vetter and Ms.

10   McDonald are dismissed with prejudice and without leave to amend.

11          2. *Monell* Municipal Liability Claim

12          Mr. Mayanja also avers that Shoreline is subject to municipal liability under

13   § 1983 for implementing "longstanding practice[s]/custom[s]" that led to the violation of

14   his constitutional rights. (*See* Compl. at 25-26, 30-33.) For the purposes of a § 1983

15   claim, a local governmental unit may not be held responsible for the acts of its employees

16   under a respondeat superior theory of liability. *Castro v. Cnty. of Los Angeles*, 833 F.3d

17   1060, 1073-74 (9th Cir. 2016) (citing *Monell v. Dep't of Soc. Servs. of City of New York*,

18   436 U.S. 658, 691-94 (1978)). Rather, to establish municipal liability, a plaintiff must

19

20          [4] Mr. Mayanja alleges that Ms. Vetter and Ms. McDonald were employed by Shoreline at
     all times relevant to this action. (*See* Compl. at 19.) Courts in this circuit have found, however,

21   that even district attorneys are entitled to immunity for suits for damages in their official
     capacities in connection with their exercise of prosecutorial functions. *See Adamson*, 2022 WL

22   1667016, at *5.

1   allege that the alleged "constitutional deprivation was the product of a policy or custom

2   of the local government unit." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793 (9th

3   Cir. 2016). A "policy" includes the acts of municipal policymaking officials. *Connick v.*

4   *Thompson*, 563 U.S. 51, 61 (2011). In the absence of an explicit policy, "a plaintiff may

5   establish municipal liability based on a 'custom,' expressed as a permanent and well-

6   settled practice by the municipality, which gave rise to the alleged constitutional

7   violation." *Adamson*, 2022 WL 1667016, at *9 (citations omitted).

8           While Mr. Mayanja alleges that the exculpatory and impeaching information was

9   withheld pursuant to a "'longstanding practice/custom' which constitutes the standard

10  operating procedure of [] Shoreline[,]" he fails to plead any facts identifying what that

11  practice or custom is and how that practice or custom caused the alleged constitutional

12  violations. *See Adamson*, 2022 WL 1667016, at *9. Accordingly, Mr. Mayanja's claim

13  is too conclusory to establish a municipal liability claim on these grounds.

14          A *Monell* municipal liability claim may also be established by showing that a local

15  government "ratif[ied] a subordinate's unconstitutional decision or action and the basis

16  for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010),

17  *overruled in part on other grounds by Castro*, 833 F.3d at 1070. To establish a *Monell*

18  claim under the ratification theory, the plaintiff must plausibly plead that an officer with

19  final policymaking authority ratified the alleged unconstitutional action. *See Ellins v.*

20  *City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013). The court looks to state law

21  to identify officials with final policy-making authority. *See City of St. Louis v.*

22  *Praprotnik*, 485 U.S. 112, 124 (1988). "If the authorized policymakers approve a

ORDER - 7

1    subordinate's decision and the basis for it, their ratification would be chargeable to the

2    municipality because their decision is final." *Clouthier*, 591 F.3d at 1249-50.  "There

3    must, however, be evidence of a conscious, affirmative choice" on the part of the

4    authorized policymaker.  *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).  "That

5    an officer was not reprimanded or provided with additional training cannot support a

6    theory of ratification without more."  *French v. Pierce Cnty.*, No. C22-05079DGE, 2022

7    WL 2317299, at *4 (W.D. Wash. June 28, 2022).

8        Here, Mr. Mayanja alleges that Ms. Roberts, "as a city attorney," "is an official

9    with final policymaking authority[.]"  (Compl. at 31.)  Even assuming, without deciding,

10   that Ms. Roberts has policymaking authority, Mr. Mayanja's allegations that she

11   "ratified" the allegedly unconstitutional conduct—without more—are conclusory and fail

12   to plead any "conscious, affirmative choice" by Ms. Roberts.  (*See* Compl. at 20, 30, 31);

13   *Gillette*, 979 F.2d at 1347.  This claim against Shoreline and Ms. Roberts is dismissed

14   without prejudice and with leave to amend.

15   **B.    Malicious Prosecution Claim**

16       Mr. Mayanja also fails to plead a malicious prosecution claim that "raise[s] [his]

17   right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  To maintain a

18   malicious prosecution action under Washington law, a plaintiff must show:  (1) the

19   prosecution was instituted or continued by the defendant; (2) there was want of probable

20   cause for the institution or continuation of the prosecution; (3) the proceedings were

21   instituted or continued through malice; (4) the proceedings terminated on the merits in

22   favor of the plaintiff or were abandoned; and (5) the plaintiff suffered injury or damage

1    as a result of the prosecution. *Wheeler v. Broggi*, No. C19-1410JCC-MAT, 2020 WL

2    5350641, at *5 (W.D. Wash. Feb. 11, 2020), *report and recommendation adopted*, No.

3    C19-1410JCC, 2020 WL 2111249 (W.D. Wash. May 4, 2020) (citing *Bender v. City of*

4    *Seattle*, 664 P.2d 492, 500 (1983)).  The existence of probable cause is a complete

5    defense to a malicious prosecution claim. *Id.*

6        Mr. Mayanja asserts that City Defendants "effectively" lacked probable cause

7    because his conviction was "procured by fraud" and "perjury" as a result of City

8    Defendants' suppression of evidence and "conniving" with Ms. Mayanja to assert "false

9    criminal allegations." (Compl. at 34, 37; *see also id.* at 38-44.)  But these allegations fail

10   to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b).

11   Even liberally construing Mr. Mayanja's complaint, *see McGurkin*, 974 F.2d at 1055, the

12   court is unable to "draw the reasonable inference" that City Defendants lacked probable

13   cause and "[are] liable for the misconduct alleged." *See Twombly*, 550 U.S. at 555.  Mr.

14   Mayanja's malicious prosecution claim is therefore dismissed without prejudice and with

15   leave to amend.

16   **C.    Fraud Claim Against Ms. Schultz Banchero and Ms. Mayanja**

17        Mr. Mayanja also alleges that Ms. Schultz Banchero "encourag[ed]" Ms. Mayanja

18   to make false allegations that led to his subsequent charges and conviction.  (Compl. at

19   18; *see id.* at 36-37.)  Mr. Mayanja, however, does not specify which of Ms. Mayanja's

20   allegations were false, nor does he plead any facts to plausibly show that Ms. Schultz

21   Banchero knew such allegations were false or that she encouraged Ms. Mayanja to make

22   false allegations.  Mr. Mayanja's allegations lack the specificity required to establish a

fraud claim at the pleading stage. *See* Fed. R. Civ. P. 9(b). Accordingly, his claims

against Ms. Schultz Banchero and Ms. Mayanja are dismissed without prejudice and with

leave to amend.

**D.    "Manifest Negligence" Claim**

Mr. Mayanja's "manifest negligence" claim appears to be directed at Ms. Vetter

and Ms. McDonald in connection with their failure to turn over exculpatory or

impeaching evidence. (*See* Compl. at 45-46; *see id.* at 47-48 (directing his allegations at

the "prosecutors").) But as stated above, prosecutors are immune from civil damages suit

for failing to turn over *Brady* evidence. *See Broam*, 320 F.3d at 1030. Accordingly, Mr.

Mayanja's negligence claim fails. This claim is therefore dismissed with prejudice and

without leave to amend.

**E.    42 U.S.C. § 1985(3) Claim**

Mr. Mayanja also pleads that Defendants violated 42 U.S.C. § 1985(3). (Compl.

at 51-52.) "Section 1985 'prohibits conspiracies for the purpose of depriving, either

directly or indirectly, any person or class of persons of the equal protection of the

laws[.]" *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). Mr. Mayanja alleges

that Shoreline "condones customs and policies whereby prosecutors and victim

coordinator[s] employ deliberate concealment and . . . violation of records [sic]."

(Compl. at 51.) He contends that Defendants "must think that they did something wrong"

because Ms. McDonald "murmured" "in passing" to his counsel that "if [Mr. Mayanja]

sues us, we'll just turn to malpractice insurance." (*Id.*) He also argues that Defendants

tampered with evidence, secured the execution of unidentified documents by deception,

1    and tampered with governmental records.  (*Id.* at 52.)  These allegations, however, are

2    insufficient to plead a conspiracy under § 1985(3).  Allegations that have been held

3    sufficiently specific to properly state a claim for conspiracy include those that "identify

4    the period of the conspiracy, the object of the conspiracy, and certain other actions of the

5    alleged conspirators taken to achieve that purpose," as well as those that "identify which

6    defendants conspired, how they conspired and how the conspiracy led to a deprivation

7    of . . . constitutional rights[.]"  *Holgate*, 425 F.3d at 998-99 (internal quotations and

8    citations omitted).  Other than alleging that Defendants "connived" to conceal evidence

9    and assert false claims against him, Mr. Mayanja fails to plead any facts showing an

10   agreement among the Defendants to conspire against him.  Accordingly, as pleaded, Mr.

11   Mayanja's claims are insufficiently specific to state a § 1985(3) claim.  The court

12   therefore dismisses this claim without prejudice and with leave to amend.

13   **F.    Limited Leave to Amend**

14        When a court dismisses a *pro se* plaintiff's complaint, it must give the plaintiff

15   leave to amend "[u]nless it is absolutely clear that no amendment can cure the defect" in

16   the complaint.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  In light of the

17   Ninth Circuit's liberal policy favoring amendment, the court grants Mr. Mayanja an

18   opportunity to file an amended complaint correcting the deficiencies identified with

19   respect to his municipal liability, malicious prosecution, fraud, and § 1985(3) claims.  Mr.

20   Mayanja shall file his amended complaint, if any, by no later than **April 30, 2025**.  If Mr.

21   Mayanja fails to timely comply with this order or fails to file an amended complaint that

22

1 remedies the deficiencies discussed in this order, the court will dismiss this case without

2 prejudice.

### IV.   CONCLUSION

4     For the foregoing reasons, the court DISMISSES Mr. Mayanja's complaint (Dkt.

5 # 4) on § 1915(e)(2)(B) review with limited leave to amend:

6     (1)  Mr. Mayanja's § 1983 *Brady* claim and manifest negligence claims are

7 DISMISSED with prejudice and without leave to amend.

8     (2)  Mr. Mayanja's municipal liability, malicious prosecution, fraud, and § 1985(3)

9 claims are DISMISSED without prejudice and with leave to amend.

10     (3)  The court GRANTS Mr. Mayanja leave to file an amended complaint that

11 corrects the deficiencies identified herein by no later than **April 30, 2025**.  Failure to file

12 a timely amended complaint that cures these deficiencies will result in the dismissal of

13 Mr. Mayanja's complaint without further leave to amend.

14     Dated this 1st day of April, 2025.

15
16                                          JAMES L. ROBART
                                           United States District Judge

17
18
19
20
21
22