UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ISAAC NSEJJERE MAYANJA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SHORELINE, et al.,<br><br>Defendants. | CASE NO. C25-0429JLR<br><br>ORDER |

## I.  INTRODUCTION

Before the court is *pro se* Plaintiff Isaac Nsejjere Mayanja's motion for summary judgment on his 42 U.S.C. § 1983 claims for violation of his Fourteenth Amendment substantive due process rights and for malicious prosecution against Defendants the City of Shoreline ("the City") and Shoreline City Prosecutor Sarah Roberts.  (MSJ (Dkt. # 26); Reply (Dkt. # 34).)  The City and Ms. Roberts oppose the motion.  (City Resp. (Dkt. # 28); Roberts Resp. (Dkt. # 31).)  The court has considered the parties' submissions, the

relevant portions of the record, and the governing law.  Being fully advised,[1] the court DENIES Mr. Mayanja's motion for summary judgment.

## II. BACKGROUND

This matter arises from the City's prosecution of Mr. Mayanja for an alleged felony assault against his then-wife, Defendant Michelle Rene Mayanja.  (*See generally* Am. Compl. (Dkt. # 7).)  Although Mr. Mayanja was originally convicted of the criminal charge, his conviction was later reversed, and the City ultimately dismissed the charge.  (*See generally id.*)

Mr. Mayanja originally alleged civil rights claims against the City, Ms. Roberts, City Victim Coordinator Alyssa Schultz Banchero, prosecutors Carmen McDonald and Emma Vetter, Ms. Mayanja, and unnamed Doe defendants for suppressing evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 88 (1963); malicious prosecution; fraud; manifest negligence; and conspiracy to deprive him of his constitutional rights.  (*See generally* Compl. (Dkt. # 4).)  United States Magistrate Judge S. Kate Vaughan granted Mr. Mayanja *in forma pauperis* ("IFP") status and recommended that this court review Mr. Mayanja's complaint under 28 U.S.C. § 1915(e)(2)(B).  (IFP Order (Dkt. # 3).)  Following that review, the court dismissed Mr. Mayanja's complaint with limited leave to amend.  (*See* 4/1/25 Order (Dkt. # 6) (dismissing Mr. Mayanja's *Brady* claims against the individual Defendants and his manifest negligence claim without leave to amend, but

---

[1] Mr. Mayanja requests oral argument; Ms. Roberts and the City do not.  The court finds that oral argument would not assist it in its determination of Mr. Mayanja's motion.  See Local Rules W.D. Wash. LCR 7(b)(4).

allowing Mr. Mayanja to amend his municipal liability, malicious prosecution, fraud, and 42 U.S.C. § 1985(3) conspiracy claims).)

Mr. Mayanja timely filed an amended complaint. (*See* Am. Compl.) After a second § 1915(e)(2)(B) review, the court dismissed Mr. Mayanja's fraud, § 1985(3) conspiracy, equal protection, and manifest negligence claims against all Defendants, along with his malicious prosecution claims against Ms. Schultz Banchero and Ms. Mayanja. (5/16/25 Order (Dkt. # 8); *see also* 9/18/25 Order (Dkt. # 27) (clarifying that the dismissals in the May 16, 2025 order were with prejudice).) The court allowed Mr. Mayanja's remaining claims to proceed and directed the Clerk to issue summons. (5/16/25 Order at 15.) The City, Ms. Roberts, and Ms. Schultz Banchero answered the amended complaint. (*See* City Ans. (Dkt. # 16); Roberts/Banchero Ans. (Dkt. # 20).)

Mr. Mayanja filed the instant motion for summary judgment on September 3, 2025. (*See* MSJ.) The motion is now fully briefed and ripe for decision.

### III.   ANALYSIS

Below, the court begins by setting forth the standard of review for motions for summary judgment, then considers Mr. Mayanja's motion. In doing so, the court is mindful that Mr. Mayanja is proceeding *pro se* and, therefore, the court is required to construe his filings liberally. *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992). Nevertheless, a *pro se* litigant must follow the same rules of procedure that govern other litigants. *See, e.g., Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997).

A.    **Standard of Review**

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Because Ms. Roberts bears the burden to show that she is entitled to absolute prosecutorial immunity from Mr. Mayanja's § 1983 claims, Mr. Mayanja "must either produce evidence negating an essential element of [Ms. Roberts's] . . . defense or show that [Ms. Roberts] does not have enough evidence of an essential element to carry [her] ultimate burden of persuasion at trial." *Jones v. Williams*, 791 F.3d 1023, 1030-31 (9th Cir. 2015) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). Because he bears the burden of proof on his § 1983 claims, however, Mr. Mayanja must "come forward with evidence which would entitle [him] to a directed verdict [on his § 1983 claims] if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted). If Mr. Mayanja meets his burden of production, the burden then shifts to the City and Ms. Roberts to identify specific facts from which a factfinder could reasonably find in their favor. *Celotex*, 477 U.S. at 324;

*Anderson*, 477 U.S. at 250.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]"  Fed. R. Civ. P. 56(c)(1)(A).

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations omitted).  It may not weigh evidence or make credibility determinations.  *Anderson*, 477 U.S. at 249-50.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Here, Mr. Mayanja moves for summary judgment on his § 1983 claims for violations of his substantive due process rights and for malicious prosecution against the City and Ms. Roberts.  (*See generally* MSJ.)  Accordingly, to prevail on summary judgment, Mr. Mayanja bears the burden of demonstrating that there is no genuine dispute of material fact as to the City's and Ms. Roberts's liability for substantive due process violations or malicious prosecution and that no reasonable juror could find in their favor on those claims.  Fed. R. Civ. P. 56(a); *Scott*, 550 U.S. at 380.

**B.    Prosecutorial Immunity**

The court liberally construes Mr. Mayanja's motion as seeking an order on summary judgment that Ms. Roberts cannot, as a matter of law, assert absolute prosecutorial immunity from his § 1983 claims.  (*See generally* MSJ.)  The court denies the motion.

ORDER - 5

1    Prosecutors are absolutely immune from § 1983 actions when they perform
2  functions "intimately associated with the judicial phase of the criminal process," *Imbler*
3  *v. Pachtman*, 424 U.S. 409, 430 (1976), or "when performing the traditional functions of
4  an advocate," *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997).  The Supreme Court has
5  held that such actions as seeking a grand jury indictment, dismissing claims, deciding
6  whether and when to prosecute, determining which witnesses and evidence to present,
7  making alleged misrepresentations during judicial proceedings, and supervising attorneys
8  in their obligations to disclose evidence are "intimately connected with the judicial phase
9  of the criminal process" and thus give rise to prosecutorial immunity.  *See, e.g.*, *Imbler*,
10 424 U.S. at 431 (holding that a prosecutor is absolutely immune for initiating a
11 prosecution and presenting the state's case); *id.* at 431 n.33 (listing functions that are part
12 of a prosecutor's duty as a prosecutor); *Van de Kamp v. Goldstein*, 555 U.S. 335, 339
13 (2009) (holding absolute immunity extends to claims that the prosecution failed to
14 disclose impeachment material based on failure to train, supervise, or establish processes
15 regarding impeachment material).
16   Here, Mr. Mayanja alleges that Ms. Roberts engaged in wrongdoing such as
17 initiating his criminal prosecution, opposing his motion to vacate his conviction,
18 concealing exculpatory evidence, making "problematic closing arguments," and ratifying
19 other prosecutors' decisions to withhold exculpatory evidence.  (*See generally* MSJ; *see*
20 *also* Mayanja Decl. (Dkt. # 26-1) ¶¶ 2-14, Exs. A-N.)  Having reviewed the evidence in
21 the light most favorable to Ms. Roberts, and mindful of Supreme Court precedent, the
22 court cannot conclude, as a matter of law, that absolute prosecutorial immunity does not

apply to Ms. Roberts's conduct.  Therefore, the court denies Mr. Mayanja's motion for summary judgment to the extent he seeks a ruling that Ms. Roberts cannot invoke absolute prosecutorial immunity from his § 1983 claims.  Furthermore, because Mr. Mayanja has not met his burden to demonstrate, as a matter of law, that absolute prosecutorial immunity does not bar his claims against Ms. Roberts, the court denies Mr. Mayanja's motion for summary judgment as to his § 1983 claims against Ms. Roberts for violation of his substantive due process rights and for malicious prosecution.

C. *Monell* Liability

Mr. Mayanja also seeks an order that the City is, as a matter of law, subject to municipal liability for his § 1983 substantive due process and malicious prosecution claims.  (*See generally* MSJ.)  "[T]o establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury" and that the policy or custom "reflects deliberate indifference" to constitutional rights.  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (first quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), and then quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)).  The custom or policy must be a "'deliberate choice to follow a course of action . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question.'"  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).  Municipal liability also lies where "'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis

for it.'" *Id.* (quoting *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010)). Even if there is not an explicit policy, a plaintiff may establish municipal liability upon a showing that the policy or custom is so "persistent and widespread" that it constitutes a "permanent and well-settled" practice by the municipality. *Id.* (quoting *Monell*, 436 U.S. at 691).

Mr. Mayanja argues that the attorneys involved in his prosecution and trial concealed evidence in violation of his constitutional rights and that Ms. Roberts was a final policymaker who ratified those actions. (*See, e.g.*, MSJ at 9-10.) He asserts that this conduct constitutes an unconstitutional policy or custom because it took place over the course of over two years and involved seven proceedings, three prosecutors, and two court findings of suppression of evidence. (*Id.* at 11.) He also contends that Ms. Roberts was a final policymaker because she had "sole oversight" over the prosecutor's office. (MSJ at 13 (citing Mayanja Decl. ¶ 14, Ex. N at Request for Admission # 15 (admitting that Ms. Roberts "oversees all decisions within the City Prosecutor's office and . . . has final authority over such decisions")).) The City counters that conduct relating to one individual who was allegedly singled out for unique treatment cannot establish the type of "longstanding practice or custom" that gives rise to municipal liability. (*See* Resp. at 8-9 (quoting *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)).) It further asserts that Mr. Mayanja has not satisfied his burden to prove, as a matter of law, that Ms. Roberts was a final policymaker for the City. (*Id.* at 9-11.)

The court agrees with the City. First, it is well established that liability for an unconstitutional policy or custom "'must be founded upon practices of sufficient

1  duration, frequency and consistency that the conduct has become a traditional method of
2  carrying out policy.'" *Gordon*, 6 F.4th at 974 (quoting *Trevino v. Gates*, 99 F.3d 911,
3  918 (9th Cir. 1996)). Here, all of the conduct Mr. Mayanja describes in his response
4  relates to his own prosecution, and Mr. Mayanja has not directed the court to any cases
5  finding a persistent and widespread municipal policy or custom under § 1983 where the
6  conduct at issue relates to a single plaintiff alone. (*See generally* Resp.)

7  Second, there are genuine disputes of fact as to whether Ms. Roberts was a final
8  decisionmaker for the City. As City Attorney Margaret J. King explains, the City does
9  not have an appointed or elected City Prosecutor, but instead contracts with private
10 attorneys, like Ms. Roberts, for prosecution services. (King Decl. (Dkt. # 29) ¶¶ 2-3.)
11 She further asserts that although the City's contract with Ms. Roberts provided her
12 prosecutorial discretion and the ability to make decisions in that context, it did not give
13 her authority to make policy for the City. (*Id.* ¶¶ 5-6.) To the contrary, according to Ms.
14 King, the City of Shoreline Councilmembers alone have final policymaking authority on
15 behalf of the City. (*Id.* ¶ 5.) Based on Ms. King's declaration, the court cannot find that
16 Mr. Mayanja has met his burden to show that he is entitled to judgment as a matter of law
17 that Ms. Roberts was a final policymaker for the City. Accordingly, the court denies Mr.
18 Mayanja's motion for a ruling on summary judgment that the City bears *Monell* liability
19 for his § 1983 substantive due process and malicious prosecution claims.
20 //
21 //
22 //

## IV.   CONCLUSION

For the foregoing reasons, the court DENIES Mr. Mayanja's motion for summary judgment (Dkt. # 26).

Dated this 4th day of November, 2025.

JAMES L. ROBART
United States District Judge

ORDER - 10