UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ISAAC NSEJJERE MAYANJA, | CASE NO. C25-0429JLR |
| Plaintiff, | ORDER |
| v. | |
| CITY OF SHORELINE, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court are: (1) Defendant the City of Shoreline's (the "City") motion for summary judgment (City MSJ (Dkt. # 41); City Reply (Dkt. # 49)); (2) Defendants City Prosecutor Sarah Roberts and City Victim Coordinator Alyssa Schultz-Banchero's (together, "Individual Defendants") motion for summary judgment (Defs. MSJ (Dkt. # 43); Defs. MSJ Reply (Dkt. # 52)); and (3) *pro se* Plaintiff Isaac Nsejjere Mayanja's second motion for partial summary judgment (Pl. MSJ (Dkt. # 36); Pl. MSJ Reply (Dkt. # 39)). The City opposes Mr. Mayanja's motion (Pl. MSJ Resp. (Dkt. # 37)), and Mr.

ORDER - 1

Mayanja opposes the City's motion and Individual Defendants' motion (City MSJ Resp. (Dkt. # 48); Defs. MSJ Resp. (Dkt. # 47)).  The court has considered the parties' submissions, the relevant portions of the record, and the governing law.  Being fully advised,[1] the court GRANTS the motions for summary judgment filed by the City and the Individual Defendants and DENIES Mr. Mayanja's motion for partial summary judgment.

## II.    BACKGROUND

This matter arises from the City's prosecution of Mr. Mayanja for an alleged felony assault against his then-wife, former Defendant Michelle Rene Mayanja.  (*See generally* Am. Compl. (Dkt. # 7).)  Although Mr. Mayanja was originally convicted of the criminal charge, his conviction was later reversed, he was granted a new trial, and the City ultimately dismissed the charges against Mr. Mayanja.  (*See generally id.*)  The court sets forth the relevant factual and procedural background below.

**A.    Factual Background**

On June 13, 2022, Mr. Mayanja was charged with assault in the fourth degree – domestic violence after allegedly assaulting Ms. Mayanja.  (*See* 9/24/25 Roberts Decl. (Dkt. # 32) ¶ 3, Ex. 2 (criminal complaint); *see also* City Ans. (Dkt. # 16) ¶ 10.)  A criminal trial court found probable cause for the charge at Mr. Mayanja's arraignment on July 11, 2022.  (*See* 9/24/25 Murphy Decl. (Dkt. # 30) ¶ 3, Ex. B (motion and order to

---

[1] No party requests oral argument, and the court finds that oral argument would not assist it in the disposition of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

dismiss Mr. Mayanja's criminal case ("Dismissal")) at 1.)  A jury found Mr. Mayanja guilty of assault in the fourth degree on February 14, 2023.  (*Id.* ¶ 2, Ex. A (jury verdict).)

Mr. Mayanja subsequently moved for a new trial, alleging, in relevant part, that the City had suppressed potentially exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  (*See* 9/3/25 Mayanja Decl. (Dkt. # 26-1) ¶ 2, Ex. A ("Order Granting New Trial") at 1.)  The trial court granted the motion on September 14, 2023.  (*Id.* at 15.)  The trial court held that the City did not commit a *Brady* violation because the records Mr. Mayanja alleged had been suppressed "were always in the care, custody[,] and control of the Defense."  (*Id.* at 13; *see also id.* at 9 (concluding that no *Brady* violation occurred because the "evidence [] was provided by the defense to the prosecution").)  The trial court, however, granted Mr. Mayanja a new trial based on the alleged suppression during trial of "medical records, text messages, emails, and other documents and photographs[.]"  (*Id.* at 11-13.)  The trial court explained that when Mr. Mayanja mentioned the records during cross-examination, the City claimed it had never received the records and asked the court to suppress them, and defense counsel admitted he had not produced the records.  (*Id.* at 11-12.)  The trial court excluded the records from evidence at trial based on these representations.  (*Id.*)  As it turned out, however, the City had received the records from Mr. Mayanja by email before it made its charging decision, but the email had been marked as spam and never opened.  (*Id.* at 9; *see* 9/24/25 Roberts Decl. ¶ 11, Ex. 10 at 5-6.)  The trial court concluded that the suppression of the records during trial was "fundamentally unfair" because some of the records were

potentially exculpatory and granted Mr. Mayanja's motion for a new trial. (Order Granting New Trial at 15.)

In the lead-up to Mr. Mayanja's re-trial, the defense served a subpoena on the City Prosecutor's office seeking notes and emails created by the City's Victim Coordinator, Ms. Schultz-Banchero, and the City moved to quash the subpoena. (*See* 9/3/25 Mayanja Decl. ¶ 12, Ex. L ("Second Criminal Court Order") at 1; *see also id.* ¶ 13, Ex. M (City's opposition to production of its prosecutor's file).) On September 19, 2024, after conducting an *in camera* review, the trial court ordered the City to produce the documents. (*See* Second Criminal Court Order at 3.) The trial court signed Mr. Mayanja's proposed findings of fact and conclusions of law, but added to the proposed order an explanation that it had reviewed the notes and emails and determined that they were not attorney work product. (*Id.*) Finding that the documents were discoverable and included exculpatory information to which Mr. Mayanja was entitled, the trial court ordered that the notes and emails be disclosed to the defense. (*Id.*) At the end of the order, the trial court stated, "This ruling is per Maryland v. Brady and CrRLJ 4.7[2] and the cases reviewed and presented in briefing by the parties." (*Id.*) The City gave Mr. Mayanja access to review the evidence in compliance with the order. (9/3/25 Mayanja Decl. ¶ 14, Ex. N ("Roberts RFA Ans.") at RFA No. 5.)

On November 7, 2024, the City moved to dismiss its case against Mr. Mayanja with prejudice. (*See generally* Dismissal.) The City explained that it sought dismissal

---

[2] CrRLJ 4.7 governs discovery in criminal proceedings in courts of limited jurisdiction. *See* Wash. CrRLJ 4.7.

ORDER - 4

because (1) litigation relating to the dissolution of the Mayanjas' marriage required Mr. Mayanja to undergo certain treatment and be subject to an order prohibiting contact—the same outcomes the City and Ms. Mayanja sought from the criminal matter; (2) Ms. Mayanja preferred not to go through the stress of another jury trial given the relief provided in the dissolution proceedings; (3) the Mayanjas' adult daughter, who testified during the first trial, was unwilling to participate in a second trial; and (4) one of the primary officers who investigated the assault passed away and could no longer testify. (*Id.* at 1-2; *see* 1/16/26 Roberts Decl. (Dkt. # 45) ¶ 4 (explaining the reasons the City moved to dismiss its case against Mr. Mayanja.)  The trial court granted the motion the same day.  (*See generally* Dismissal.)

**B.     Procedural Background**

Mr. Mayanja initiated this action on March 11, 2025.  (IFP Mot. (Dkt. # 1).)  In his original complaint, Mr. Mayanja alleged civil rights claims against the City, Ms. Roberts, Ms. Schultz-Banchero, prosecutors Carmen McDonald and Emma Vetter, Ms. Mayanja, and unnamed Doe defendants for suppressing evidence in violation of *Brady*; malicious prosecution; fraud; manifest negligence; and conspiracy to deprive him of his constitutional rights.  (*See generally* Compl. (Dkt. # 4).)  United States Magistrate Judge S. Kate Vaughan granted Mr. Mayanja *in forma pauperis* status and recommended that this court review Mr. Mayanja's complaint under 28 U.S.C. § 1915(e)(2)(B).  (IFP Order (Dkt. # 3).)  Following that review, the court dismissed Mr. Mayanja's complaint with limited leave to amend.  (*See* 4/1/25 Order (Dkt. # 6) (dismissing Mr. Mayanja's *Brady* claims against the Individual Defendants and his manifest negligence claim without leave

ORDER - 5

to amend, but allowing Mr. Mayanja leave to amend his municipal liability, malicious prosecution, fraud, and conspiracy claims).)

Mr. Mayanja timely filed an amended complaint. (*See* Am. Compl.) After a second § 1915(e)(2)(B) review, the court dismissed Mr. Mayanja's fraud, conspiracy, equal protection, and manifest negligence claims against all Defendants, along with his malicious prosecution claims against Ms. Schultz-Banchero and Ms. Mayanja. (5/16/25 Order (Dkt. # 8); *see also* 9/18/25 Order (Dkt. # 27) (clarifying that these dismissals were with prejudice).) The court allowed two of Mr. Mayanja's claims to proceed: (1) a 42 U.S.C. § 1983 substantive due process claim against the City and the Individual Defendants, and (2) a § 1983 malicious prosecution claim against the City and Ms. Roberts. (5/16/25 Order at 14-15.) The City and the Individual Defendants answered the amended complaint. (*See* City Ans.; Roberts/Banchero Ans. (Dkt. # 20).)

On September 3, 2025, Mr. Mayanja filed his first motion for partial summary judgment against the City and Ms. Roberts. (*See* 1st MSJ (Dkt. # 26).) The court denied Mr. Mayanja's motion after concluding that he had failed to establish, as a matter of law, that (1) Ms. Roberts was not protected by prosecutorial immunity and (2) the City was subject to municipal liability for his § 1983 substantive due process and malicious prosecution claims. (*See generally* 11/4/25 Order (Dkt. # 35).)

Mr. Mayanja filed his second motion for partial summary judgment on December 9, 2025. (*See* Pl. MSJ.) In his second motion, Mr. Mayanja argues only that the City is subject to municipal liability as a matter of law; he no longer argues that he is entitled to judgment as a matter of law on Ms. Roberts's prosecutorial immunity. (*See generally id.*)

The City moved for summary judgment on January 15, 2026 (*see* City MSJ), and the Individual Defendants filed their motion for summary judgment on January 16, 2026 (*see* Defs. MSJ).  All three motions are now fully briefed and ripe for decision.

### III.   ANALYSIS

Below, the court begins by setting forth the standard of review for motions for summary judgment, then considers the parties' motions.  In doing so, the court is mindful that Mr. Mayanja is proceeding *pro se* and, therefore, the court must construe his filings liberally.  *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992).  Nevertheless, a *pro se* litigant must follow the same rules of procedure that govern other litigants.  *See, e.g., Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997).

**A.   Standard for Summary Judgment**

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1985).  A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id*.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the movant seeks summary judgment on a claim or defense on which the nonmovant

ORDER - 7

bears the burden of persuasion at trial, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If, however, the moving party bears the burden of persuasion at trial, the moving party must "come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A).

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations omitted). It may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

ORDER - 8

**B.      Threshold Issue: Mr. Mayanja's Requests for Admission to the City**

Mr. Mayanja asserts that the court must deem his second set of requests for admission to the City ("City RFAs") admitted because the City failed to timely respond to them. (Pl. MSJ at 3 (citing Fed. R. Civ. P. 36(a)(3)); *see* 12/9/25 Mayanja Decl. (Dkt. # 36-1) ¶ i, Ex. A ("City RFAs").) The court disagrees.

Under Federal Rule of Civil Procedure 36(a)(3), a request for admission is deemed admitted unless the party to whom the request was directed serves an answer or objection within 30 days after being served with the request. Fed. R. Civ. P. 36(a)(3). Mr. Mayanja represents that he served the City RFAs by email on November 5, 2025, "pursuant to the parties' electronic service agreement" (12/9/25 Mayanja Decl. ¶ i), but the City failed to answer the RFAs until December 30, 2025 (Pl. MSJ Reply at 5).[3]

The City, however, asserts that it never entered into a written electronic service agreement with Mr. Mayanja. (2/12/26 Murphy Decl. (Dkt. # 50) ¶ 4); *see* Fed. R. Civ. P. 5(b)(2)(E) (providing that a party may serve a paper electronically by "filing it with the court's electronic-filing system or sending it by other electronic means *that the person consented to in writing*") (emphasis added). As a result, according to the City, Mr. Mayanja's purported service of the City RFAs by email on November 5, 2025, was not effective under Federal Rule of Civil Procedure 5. (2/12/26 Murphy Decl. ¶¶ 5-6.) Instead, the City argues that Mr. Mayanja did not properly serve the City RFAs pursuant to Rule 5 until December 9, 2025, when he attached them as an exhibit to his second

---

[3] The court presumes that Mr. Mayanja's reference to 12/30/26 in his reply is a typographical error.

ORDER - 9

motion for summary judgment and served them through CM/ECF. (*Id.* ¶¶ 3-6.) The City then served its objections and answers to the City RFAs on Mr. Mayanja on December 30, 2025, within Rule 36(a)(3)'s 30-day limit. (*Id.* ¶ 2, Exs. A, B; *id.* ¶ 6; *see* 12/30/25 Murphy Decl. (Dkt. # 38) ¶ 2(A), Ex. A ("City RFA Ans.").)

Although Mr. Mayanja insists that the City RFAs must be deemed admitted because the City's answers were long overdue, he presents no evidence that he and the City ever entered into a written electronic service agreement pursuant to Rule 5(b)(2)(E). (*See generally* Pl. MSJ Reply; City MSJ Resp.; Defs. MSJ Resp.) Accordingly, Mr. Mayanja did not properly serve the City RFAs on the City pursuant to Rule 5 until December 9, 2025. As a result, the court concludes that the City's answers to the City RFAs were timely and denies Mr. Mayanja's request to deem the City RFAs admitted.

## C.   Motions for Summary Judgment

To succeed on his § 1983 claims against the Individual Defendants, Mr. Mayanja must show that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To suceeed on his § 1983 claims against the City, Mr. Mayanja must establish that the City is subject to municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), which requires him to "show that a 'policy or custom' led to [his] injury" and that the policy or custom "reflects deliberate indifference" to constitutional rights. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (first quoting *Monell*, 436 U.S. at 694, and then quoting *City of Canton, Ohio v. Harris*,

489 U.S. 378, 392 (1989)).  In either case, the first step in evaluating a § 1983 claim is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Mr. Mayanja asserts that (1) the City and the Individual Defendants violated his substantive due process rights by suppressing evidence in violation of *Brady* and (2) the City and Ms. Roberts violated his Fourth Amendment rights by subjecting him to malicious prosecution.  The court concludes that City and the Individual Defendants have met their burden to establish that they are entitled to judgment as a matter of law on these claims.

    1.    <u>Mr. Mayanja cannot show that Defendants violated *Brady*</u>

To establish a *Brady* violation, Mr. Mayanja must prove that (1) the allegedly suppressed evidence was favorable to him as the defendant, (2) the prosecution suppressed the evidence, and (3) the evidence is material, meaning it may have affected the outcome of the trial.  373 U.S. at 87.

Mr. Mayanja asserts that the Second Criminal Court Order directing the City to produce Ms. Schultz-Banchero's victim coordinator notes and emails establishes, as a matter of law, that Defendants violated *Brady* by failing to produce potentially exculpatory documents during the proceedings leading up to his re-trial.  (*See, e.g.*, Pl. MSJ Reply at 2 (stating that the Second Criminal Court Order "clearly and unambiguousy holds that defendant violated both *Brady* & CrRLJ 4.7"); *see also* City MSJ Resp. at 5 ("It is factually accurate that plaintiff's substantive due process claim is premised on the acknowledged indispensable 2nd criminal court Order and supporting

ORDER - 11

Exhibits which express plaintiff's actual innocence."); Defs. MSJ Resp. at 1 (referring to Mr. Mayanja's motion for summary judgment and response to the City's motion for summary judgment as establishing that Defendants' substantive due process violation is a "foregone conclusion[]").)  The Second Criminal Court Order, however, does no such thing.  Nothing in that order holds that Defendants actually committed a *Brady* violation or otherwise violated Mr. Mayanja's constitutional rights.  Instead, the order states the trial court's conclusion that the City was required to disclose Ms. Schultz-Banchero's notes and emails during discovery because they were not protected work product and were potentially exculpatory under *Brady*.  (Second Criminal Court Order at 3.)  There is no evidence that the City failed to comply with that order; to the contrary, Ms. Roberts represents that the City provided Mr. Mayanja's counsel access to the evidence, and Mr. Mayanja does not rebut this assertion.  (*See* Roberts RFA Ans. at RFA No. 5; Pl. MSJ Reply; City MSJ Resp.; Defs. MSJ Resp.)  Furthermore, there was no trial to be affected by any alleged suppression because the City dismissed the case.  Mr. Mayanja points to no other evidence supporting the conclusion that Defendants suppressed material exculpatory or impeaching evidence.  (*See generally* Pls. MSJ; Pls. MSJ Reply; City MSJ Resp.; Defs. MSJ Resp.; *see also* City MSJ Resp. at 5 (agreeing with the City that "[i]f claims were based on the 1st criminal court order, they would be legally flawed and meritless").)  Accordingly, because Mr. Mayanja has not met his burden to identify specific facts from which a factfinder could reasonably find in his favor, *Celotex*, 477 U.S. at 324, the court grants Defendants' motions for summary judgment on Mr.

Mayanja's § 1983 substantive due process claims arising from the alleged suppression of evidence in violation of *Brady*.[4]

### 2. Malicious Prosecution

To prevail on his malicious prosecution claim under § 1983, Mr. Mayanja "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (quoting *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995)) (internal quotation marks omitted).

Mr. Mayanja asserts that Defendants cannot demonstrate that they had probable cause to prosecute him because they "consistently with[eld] exculpatory evidence[.]" (Pl. MSJ Reply at 3; *see also* Defs MSJ Resp. at 2 (asserting that Ms. Roberts "was made aware of [new exculpatory] evidence but then suppress[ed] it"); Defs MSJ Resp. at 5 (asserting that Ms. Schultz-Banchero "conspired with M[s]. Roberts in suppressing" Ms. Schultz-Banchero's file).) Mr. Mayanja again relies on the Second Criminal Court Order, arguing that "malicious prosecution is an openly and transparently foregone conclusion" based on that order. (City MSJ Resp. at 6; *see also id.* ("It is factually accurate that plaintiff's malicious prosecution claim is premised on the 2nd criminal court Order and supporting Exhibits . . . which express plaintiff's actual innocence.").) As

---

[4] This result would be the same even if the court deemed the City's answers to the City RFAs admitted. Even when viewed in the light most favorable to Mr. Mayanja, the City RFAs cannot reasonably lead to the conclusion that the City or anyone else violated *Brady* by suppressing evidence during his prosecution. (*See generally* City RFAs.)

ORDER - 13

discussed above, however, the trial court did not hold that Defendants violated *Brady*; instead, it ordered the City to produce Ms. Schultz-Banchero's notes and emails because they were not attorney work product and were exculpatory. (*See* Second Criminal Court Order at 3.) Furthermore, Mr. Mayanja has directed the court to no evidence of malicious intent by Ms. Roberts or Ms. Schultz-Banchero, nor does he rebut Ms. Roberts's explanation that she moved to dismiss the case because the goals of the prosecution were accomplished through the Mayanjas' dissolution action and because Ms. Mayanja and key witnesses were unwilling or unavailable to testify. (*See* Dismissal at 1-2; *see generally* Pls. MSJ Reply; City MSJ Resp.; Defs. MSJ Resp.) Therefore, the court concludes that Mr. Mayanja has not satisfied his burden to demonstrate a genuine issue of material fact regarding his malicious prosecution claims and grants Defendants' motions for summary judgment on those claims.

Because the court has granted Defendants' motions for summary judgment on Mr. Mayanja's substantive due process and malicious prosecution claims, Mr. Mayanja cannot meet his burden to demonstrate the City's municipal liability for those claims. Therefore, the court denies Mr. Mayanja's motion for partial summary judgment on municipal liability.

//

//

//

//

//

ORDER - 14

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS the City and the Individual Defendants' motions for summary judgment (Dkt. ## 41, 43) and DENIES Mr. Mayanja's second motion for partial summary judgment (Dkt. # 36).  Mr. Mayanja's claims, and this action, are DISMISSED with prejudice.

Dated this 28th day of April, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 15